**STATE of Missouri, Plaintiff–Respondent,**

v.

**Clyde Reed GOAD, Defendant–Appellant.**

**Clyde Reed GOAD, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

Nos. 65353, 68400.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 4, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 10, 1996.

Application to Transfer Denied
Aug. 20, 1996.

J. Martin Hadican, St. Louis, Michael A. Gross, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christine M. Blegen, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant appeals the judgment entered pursuant to the convictions by a jury for Count I sodomy, § 566.060, RSMo 1986, and Count II rape, § 566.030, RSMo 1986. The trial court sentenced Defendant as a prior and persistent offender to concurrent life terms of imprisonment. We affirm in part and reverse in part.

The evidence in the light most favorable to the verdicts was as follows. Victim, a six-year-old girl, asked her mother if she was suppose to love everybody. Victim's mother said yes. Victim said she loved her mother,

her step-father, but not Defendant who was victim's paternal grandfather. When asked why she did not love Defendant, victim said she was not suppose to tell. Upon further inquiry, victim told her mother that Defendant "got on top of her, he went up and down, he rubbed real hard, and that it hurt."

Victim's mother called the local sheriff's department and it was arranged to have Division of Family Services caseworker Sue Stone interview victim. Stone conducted two interviews that included demonstrations with anatomically correct dolls. During the first interview, victim designated a doll for Defendant, her paternal grandmother, and herself. She laid the grandmother doll on her right side and placed the victim doll next to it. She then "took the [Defendant] doll and she put it on top of the [victim] doll and she pressed on the buttocks area of the [Defendant] doll down on the [victim] doll." Stone asked victim to describe what happened in words. Stone testified:

> [Victim] told me that her grandfather [Defendant] had gotten into bed with she and her grandmother and that her grandmother had already fallen asleep. Then her grandfather [Defendant] came in later and got in bed with them. She stated that he touched her hair, her shoulders, her arms, and her vaginal area, and then he laid down on top of her and pressed on her up and down.

Stone testified that victim referred to her vaginal area and Defendant's genital area as "boo-boo." Victim told Stone Defendant pressed up and down on her for ten to fifteen minutes when Defendant ceased and went to the bathroom. When Stone asked victim if victim noticed any stains on her nightclothing the next morning, victim said there were no stains. Finally, Stone showed victim a full body drawing of a little girl. Stone asked her where she remembered Defendant touching her. Victim stated he did not touch her on her back or buttocks. However, Stone further testified:

> Q. [Prosecutor] Did she show you on the drawing where he had touched her?
> A. Yes.
> Q. Where was that?
> A. Her vaginal area.

Stone's second interview was conducted because victim requested to talk to Stone again. Stone testified that it was not unusual for child victims to request further interviews to divulge information the child later recalls. During the second interview, victim again related Defendant "had put his boo-boo in her boo-boo," and pointed to the vaginal area on the body picture. Furthermore, Stone testified that victim could then remember a stain on her clothes:

> [Victim] told me that she remembered seeing a stain or discoloration in her panties when she got up the next morning, such as if she had had diarrhea. I asked her what she meant by the word, diarrhea was it like she had cut her finger and then wiped off the cut with a washcloth, is that what she meant when she said diarrhea, a stain on a cloth of any kind. She said, "Yes."

Victim testified for the State at trial. She said on the night of the alleged criminal conduct, her paternal grandmother picked her up from her mother's house. It was cold and she wore a coat. They went to the supermarket and then to Defendant's home where they ate and watched television. Victim said when she visited her grandparents, she typically slept with her father in their own room; however, on that evening her father was not present. Victim and her grandmother went to bed together and fell asleep. She was awakened by Defendant getting into bed with them. She said Defendant held her arms down, got on top of her and pulled her underwear over. "Then he rubbed up and down and it really hurt bad. It [his "boo-boo"] was hard like wood." His "boo-boo" was between her legs, and he put his "boo-boo" in her "boo-boo." She twice told Defendant to get off of her, but he held her arms down. Victim testified he eventually stopped.

According to victim, she told her grandmother what happened the next morning. Her grandmother responded "that if he does it again [victim] can sleep in the other bedroom." Victim further said she "had bloody diarrhea in my underwear . . . Like diarrhea

but it was red ... Not a whole bunch, but not a little."

Dr. James Monteleon, a physician and Director of Child Protection at Cardinal Glennon Children's Hospital where he manages the child abuse and sexual abuse teams, testified as to the results of his physical examination of victim. He stated it was his opinion victim's vagina was penetrated by an object. Dr. Monteleon said his physical findings were strong, specific findings consistent with sexual abuse.

■ In his first point on appeal, Defendant asserts the trial court abused its discretion "when it ordered" evidence of victim's out-of-court statements regarding the purported bloodstains in her underwear admissible. Prior to trial, a hearing was held to determine the admissibility of victim's out-of-court statements to various witnesses. The court ruled these statements admissible pursuant to § 491.075, RSMo 1994. However, such interlocutory rulings are subject to change during the course of a trial. *See State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992). To preserve an issue of admissibility for appeal, the party opposing admission of the evidence must object to its reception at trial. *State v. Fleer,* 851 S.W.2d 582, 592 (Mo.App. E.D.1993). Defendant made no objection to the now complained of evidence at trial; therefore, he has failed to preserve these issues for review. *See State v. Mahany,* 748 S.W.2d 762, 765–66 (Mo.App. 1988); *State v. Carey,* 808 S.W.2d 861, 866 (Mo.App.1991).

■ Moreover, the admission of out-of-court statements pursuant to § 491.075 is within the trial court's discretion. *State v. Silvey,* 894 S.W.2d 662, 672 (Mo.1995). This statute provides for the admission of a child under twelve-years-old's hearsay statements relating to certain offense if, *inter alia,* the child testifies and "the time, content and circumstances of the statement provide sufficient indicia of reliability...." § 491.075.1. The court found victim's statements sufficiently reliable stating "the statements of the child were very consistent with each other & that the child had not been asked leading questions or suggestive questions and further that the statements were made in environ-ments that were not threatening." We find no error, plain or otherwise, in this discretionary ruling of the court. *Compare State v. Murray,* 838 S.W.2d 83 (Mo.App. W.D. 1992).

Defendant argues the victim's statement relating the diarrhea stain with blood from a cut was suggested by Stone and lacks the reliability otherwise relied upon by the court's § 491.075 holding. Obviously, a child's statement made in conditions or circumstances that indicated the statement is not a true and accurate reflection of the child's observation or impression lacks the reliability necessary to be admitted pursuant to § 491.075. Assuming arguendo, however, the diarrhea/blood statements were erroneously admitted into the record, we cannot find such admission plainly erroneous. The jury was apprised of the circumstances surrounding the child's statement. They knew the child did not initially recollect the stain and that its comparison with blood was first drawn by Stone and agreed to by the victim. Defendant had the opportunity to and, indeed, did attempt to discredit the victim's statement to the jury. Furthermore, the stain was probative of the alleged rape, and the record included strong evidence that the rape occurred. The victim's description of the rape and the medical findings were not tainted by accusations of suggestiveness. Point denied.

■ In his next two points, Defendant asserts the evidence was insufficient to support the convictions. In assessing sufficiency of the evidence supporting a conviction, we accept as true all evidence and inferences tending to support the verdict and disregard all evidence and inferences to the contrary. *State v. Logan,* 809 S.W.2d 135, 137 (Mo.App. 1991). We determine whether there was sufficient evidence from which a reasonable juror might have found Defendant guilty. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993), *cert. denied,* 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

■ Defendant claims insufficient evidence supported the finding that the alleged conduct occurred between March 1, 1991 and April 1, 1991. Defendant emphasizes the

numerous witnesses he presented who testified victim's father was present whenever Defendant and victim were together between March 1 and April 1, 1991. However, credibility of witnesses is for the jury to determine; the jury may disbelieve the testimony of a witness even if uncontroverted. *See State v. Ray*, 852 S.W.2d 165, 169 (Mo.App. S.D.1993). Victim and victim's mother both provided evidence upon which a reasonable inference may be drawn that the criminal conduct occurred during the time period charged.

Defendant further asserts the evidence was insufficient to support the Count I sodomy charge. The offense of sodomy occurs where the defendant has "deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." § 566.060, RSMo 1986.[1] At the time Defendant's alleged criminal conduct occurred, "deviate sexual intercourse" was defined as "any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person." § 566.010.1(2), RSMo 1986.

The jury was instructed pursuant to the State's sodomy theory Defendant touched victim's genitals with his hand. The State argues this theory was supported by social worker Stone's testimony relating the victim's § 491.075 hearsay statements. Specifically, the State relies on Stone's testimony: "She stated that he [Defendant] touched her hair, her shoulders, her arms, and *her vaginal area*, and then he laid down on top of her and pressed on her up and down." Furthermore, Stone testified victim pointed to the vaginal area of a drawing of a girl in response to a question to show on the drawing where Defendant "touched her."

■ A sodomy conviction may be based on testimony alone. *State v. White*, 873 S.W.2d 874, 878 (Mo.App. E.D.1994). Hearsay statements admitted pursuant to § 491.075 may be used for the truth of the matter asserted and may alone constitute

substantial evidence of an element of the offense charged. Additionally, reasonable inferences may be drawn from the child's § 491.075 statement to satisfy an element of the offense. *See, e.g., State v. Ray*, 852 S.W.2d 165, 169 (Mo.App. S.D.1993).

■ We find the evidence insufficient to support the Count I sodomy charge. Stone's testimony that victim told her Defendant "touched" her hair, shoulders and "vaginal area" failed to reveal with what he "touched" her. Nor, did Stone's testimony describe whether the touching of the "vaginal area" included her genitalia.[2] The State relies on inferences from this testimony to supply the elements of the theory that Defendant's hand touched victim's genitalia. Stone's testimony, however, clearly was not a verbatim description of the victim's statements to her (Stone testified the victim did not use terms such as "vaginal area"). Thus, the inferences the State invites us to indulge are not to be drawn from the victim's own statements of what happened to her but from a social worker's understanding of the victim's statements. While non-verbatim § 491.075 testimony has been used to support convictions (*see, e.g., State v. White*, 873 S.W.2d 874, 877 (Mo.App. E.D.1994)), to make liberal inferences from the subtle wording of non-verbatim § 491.075 testimony was not the intent of that statutory exception to the hearsay rule.

Importantly, the inferences advocated by the State were not supported by the victim's own in-court testimony. The victim was asked to describe Defendant's conduct forming the bases of the charges against him. She said Defendant held her arms down. The only other non-genitalia-to-genitalia contact described by victim was Defendant pulling her underwear over to facilitate the rape. Victim did not describe Defendant engaging in a sexual act involving his hand to her genitalia. We, of course, do not expect or demand children of such tender years to provide precise, articulate, and thorough testimony during the excitement and imposing

---

1. Section 566.060 has subsequently been amended.

2. An essential element of sodomy is that it involve the genitalia of one of the participants.

For example, a defendant's hand making sexual contact with a victim's anus does not constitute sodomy. *State v. Hooker*, 791 S.W.2d 934, 938 (Mo.App.1990).

environment of in-court testimony. Section 491.075 statements may be employed to fill the gaps in the child's testimony or to supply substantial evidence where the child's testimony is inconsistent or contains omissions. However, the victim's testimony tends only to weaken the inference the State argues should be drawn from the incomplete and ambiguous testimony of Stone's understanding of victim's hearsay statements.

Similarly, Stone's testimony that the victim pointed to the vaginal area of a drawing of a girl in response to where Defendant touched her fails to supply sufficient evidence Defendant touched her genitalia with his hand. While this supplies sufficient evidence that Defendant touched her genitalia, (*see State v. Ray,* 852 S.W.2d at 169), it fails to indicate with what. Sue Stone's testimony did not provide a thorough description of the circumstances of the victim's pointing, and the record provides no reason to believe the victim was not referring to the genital-to-genital contact of the rape. Stone testified as to the victim's playacting the incident with anatomically correct dolls, and this playacting did not include the sodomy conduct charged.

We hold this evidence insufficient to support a sodomy. The inferences sought by the State to support the conviction are too weak to provide sufficient evidence to carry the State's burden of proof, and no other evidence in the record supports or bolsters these inferences. We must therefore reverse Defendant's sodomy conviction. "Because the reversal is based on insufficient evidence, acquittal is mandated." *State v. Hooker,* 791 S.W.2d 934, 939 (Mo.App.1990).

■ In his final point on appeal, Defendant claims the court erred in denying his motion for new trial because the amended informations were insufficient in that the March 1, 1991 through April 1, 1991, window of time for the charged conduct placed a prejudicial burden of negative proof on Defendant and inadequately protected him from additional charges in this same time frame. Defendant's claim is wholly without merit. The informations satisfied all the requirements as to the form of an information. *See* Rule 23.01(b); *State v. Parkhurst,* 845 S.W.2d 31, 35 (Mo. banc 1992). Contrary to Defendant's assertion, no additional burden was placed on Defendant by the time charge of the conduct. Defendant's concern about subsequent charges did not affect his defense of the crimes actually charged, nor is the double jeopardy issue raised by Defendant a justiciable issue on this appeal. Point denied.

Defendant's judgment convicting him of sodomy is reversed and he is acquitted of the charge. We affirm the remaining judgment of rape.

CRAHAN, P.J., and CRANDALL, J., concur.