**STATE of Missouri, Respondent,**

v.

**Thomas J. MONTGOMERY, Appellant.**

**No. ED 78837.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 27, 2001.

Irene Karns, Asst. Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan L. Brown, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before ROBERT G. DOWD, JR., Judge and CHARLES B. BLACKMAR, SR. J.

WILLIAM H. CRANDALL, JR., Presiding Judge.

Defendant, Thomas Montgomery, appeals from the judgment entered after a jury found him guilty of two counts of sodomy and two counts of sexual abuse in the first degree. We reverse in part and reverse and remand in part.

In March 1993, then nine-year-old C.G. lived in Leadwood Mo., with his mother, sister and defendant. At that time, defendant and C.G.'s mother had been married approximately two years. Defendant moved out of the residence in December 1993, when he and C.G.'s mother separated. In April 1995, a boy made an allegation that C.G. touched his penis. After

denying the allegation in a discussion with his mother, C.G. became hysterical.[1] C.G. then told his mother of incidents that occurred between him and defendant. Based on what C.G. told her, C.G.'s mother contacted the Division of Family Services (DFS). C.G., his mother and sister spoke with Kelly Bernal, a child abuse investigator from DFS. DFS contracted with Kristen Ahlemeier, a licensed professional counselor, who performed "in-home therapy" for C.G., his mother and sister from June 1995 to November 1995.

A grand jury indicted defendant on two counts of sodomy and two counts of sexual abuse in the first degree. Defendant, C.G., C.G.'s mother, C.G.'s sister, Kelly Bernal, Kristen Ahlemeier and a prisoner who was in the same jail as defendant testified at trial. The jury found defendant guilty on all counts. The trial court sentenced defendant, as a prior offender, to twenty-four years imprisonment; seven years for each sodomy count and five years for each sexual abuse count. The court ordered the sentences to be served consecutively. Defendant raises two points on appeal.

■■■ In his first point, defendant challenges the sufficiency of the evidence for his conviction on Count I, for sodomy. In reviewing defendant's challenge to the sufficiency of the evidence, we consider whether a reasonable juror could find each element of a crime beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). We accept as true all evidence favorable to the state and give the state the benefit of all reasonable inferences from the evidence. *Id.* We may not, however, supply missing evidence, or give the state the benefit of unreasonable, speculative or forced inferences. *State v.*

*Whalen,* 49 S.W.3d 181, 184 (Mo. banc 2001) (citation omitted).

C.G. testified in part as follows:

[Prosecutor]: You're almost 17 now, but let me ask you, do you know what we mean when we say "good touch" and "bad touch"?

[C.G.]: Yes.

[Prosecutor]: Okay. And what would be an example of a bad touch?

[C.G.]: Getting touched on the private.

[Prosecutor]: Okay. And by "private" what do you mean?

[C.G.]: I don't know—penis.

[Prosecutor]: Okay. You've also heard it called a "penis"?

[C.G.]: Yes.

[Prosecutor]: Now let me direct your attention back to this time when you were living in Leadwood; okay?

[C.G.]: All right.

[Prosecutor]: Did someone ever touch you, when you were in Leadwood, in a bad way?

[Defendant's counsel]: Objection, Judge, leading question.

THE COURT: Overruled.

[Prosecutor]: You can answer the question, [C.G.].

[C.G.]: What was the question, now?

[Prosecutor]: The question was: Did someone ever touch you when you were living there in Leadwood, in a bad way?

[C.G.]: Yes.

[Prosecutor]: And who was that?

[C.G.]: [Defendant].

[Prosecutor]: Okay. Now, when you lived in Leadwood, did you have your own room, or did you sleep with someone else?

[C.G.]: Me and my sister.

1. According to C.G. and his mother, it was later found that the boy lied.

[Prosecutor]: Where were you the first time this happened to you?

[C.G.]: In my bedroom.

[Prosecutor]: And what happened?

[C.G.]: Um, what do you mean?

[Prosecutor]: What happened on this time—first time when [defendant] touched you in a bad way?

[C.G.]: I was laying down. I was sleeping. And he came in after work—yeah, it was after work. And he laid down with me.

[Prosecutor]: Then what happened?

[C.G.]: Then he touched me.

[Prosecutor]: Where did he touch you.

[C.G.]: On the private.

[Prosecutor]: What happened when he touched you on the private, [C.G.].

[C.G.]: I don't know. I don't remember.

[Prosecutor]: You don't remember? Did anything else happen this time, besides him touching you?

[C.G.]: Yeah, I touched him.

[Prosecutor]: And when you touched him, where did you touch him?

[C.G.]: The same place, on the private.

*    *.    *    *    *    *

[Prosecutor]: Now, when he had you touch his penis, what did you touch him with? Do you remember?

[C.G.]: Yeah, my hand.

[Prosecutor]: What did you say?

[C.G.]: My hand.

*    *    *    *    *    *

[Prosecutor]: Now, how many different times would you say that [defendant] had you touch his penis?

[C.G]: Mmm, I can't remember.

[Prosecutor]: Would it have been more than one time?

[C.G.]: Yes.

*    *    *    *    *    *

[Prosecutor]: How many times would you say that [defendant] touched your penis?

[C.G.]: I don't know. It was more than once.

*    *    *    *    *    *

[Prosecutor]: ... Do you remember telling Kelly Bernal that [defendant] rubbed his privates against your privates?

[C.G.]: Mmm, no, not really.

[Prosecutor]: Do you remember telling Kelly Bernal that he did this at least three or four different times?

[C.G.]: Done what?

[Prosecutor]: Either touched you or had you touch his penis.

[C.G.]: Yes.

*    *    *    *    *    *

[Prosecutor]: Now, do you remember a time when your mom and [sister] came home unexpectedly once?

[C.G.]: Yes.

[Prosecutor]: What happened when your mom and [sister] came—this is again—was this in Leadwood, or somewhere else?

[C.G.]: In Leadwood.

[Prosecutor]: What happened when your mom and [sister] came home unexpectedly?

[C.G.]: I was standing in the corner and my shorts was down and he touched me on the private and I jerked away and he whipped me.

[Prosecutor]: Who whipped you?

[C.G.]: [Defendant].

In the instruction on Count I for sodomy, the jury was required to find in part "that during the months of March through October 1993 ... the defendant touched [C.G.'s] penis with his hand ... and such conduct constituted deviate sexual inter-

course." The instruction defined "deviate sexual intercourse" as "any act involving the genitals of one person and the mouth, tongue, hand or anus of another person done for the purpose of arousing or gratifying the sexual desire of any person." The jury instruction on Count II for sodomy required the jury to find in part "that during the months of March through October 1993 ... the defendant made [C.G.] touch defendant's penis with [C.G.'s] hand, and ... such conduct constituted deviate sexual intercourse." This instruction also defined "deviate sexual intercourse" as quoted above. On Counts III and IV for sexual abuse in the first degree, the jury was required by the instructions to find in part "that during the months of March 1993 through October 1993 ... the defendant touched the genitals of [C.G.]."

■ C.G. testified that while lying in his bed defendant touched him on the "private." C.G. also testified that in a later incident defendant touched him on the "private," while standing in the corner. Accordingly, there was sufficient evidence that defendant touched C.G.'s genitals two times. But the jury was instructed on three counts, I, III and IV, regarding defendant touching C.G. Defendant contends that if there is not sufficient evidence that defendant touched C.G.'s penis three rather that two times then the judgment entered on Count I for sodomy should be reversed. The state asserts that "If there was a sufficiency issue, that problem arose with Count IV, sexual abuse in the first degree." The state notes that defendant does not challenge on appeal the sufficiency of the evidence for Count IV. For rea-

sons other than those set forth by defendant, his conviction on Count I for sodomy must be reversed.[2]

We review the statutes as they existed at the time of defendant's acts at issue. *State v. Hahn,* 35 S.W.3d 393, 395 n. 1 (Mo.App. E.D.2000). Section 566.060.3 RSMo. Supp.1993 provided that "[a] person commits the crime of sodomy if he has deviate sexual intercourse with another person to whom he is not married who is less than fourteen years old." The term "deviate sexual intercourse" was defined as "any sexual act involving the genitals of one person and the mouth, tongue, *hand* or anus of another person."[3] Section 566.010.1 RSMo. Supp.1993 (emphasis added).

■ In accordance with sections 566.010.1 and 566.060.3, the instruction on Count I for sodomy required the jury to find that "the defendant touched [C.G.'s] penis with his hand." C.G. testified that defendant twice touched his "private." Although C.G. specifically testified that he touched defendant's penis with his "hand" as required under Count II, C.G. did not testify that defendant touched his "private" with his hand either in the bedroom or while standing in the corner. Evidence that defendant touched C.G. *with his hand* was necessary in this case to find defendant guilty on Count I. *See* sections 566.010.1, 566.060.3 RSMo. Supp.1993; *State v. Goad,* 926 S.W.2d 152, 156–57 (Mo.App. E.D.1996). Review of the evidence in the light most favorable to the verdict and the reasonable inferences drawn therefrom is insufficient to support

---

**2.** "If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Withrow,* 8 S.W.3d 75, 77 (Mo. banc 1999).

**3.** The definition of "deviate sexual intercourse" was amended in 1994, and the word "hand" was deleted. *State v. Price,* 940 S.W.2d 534, 536 (Mo.App. E.D.1997). In 2000, the legislature again amended the definition of "deviate sexual intercourse," and reinserted the word "hand."

a finding of guilt on Count I. Accordingly, the judgment entered as to that count must be reversed.

Evidence that defendant touched C.G.'s genitals with his *hand* was not required for a finding of sexual contact and therefore a finding of guilt for of first degree sexual abuse.[4] C.G.'s testimony that defendant touched his "private" two times was sufficient for finding defendant guilty on Counts III and IV for first degree sexual abuse. The judgment entered on Count I is reversed and defendant is discharged as to that count.

Defendant argues in his second point that the trial court abused its discretion when it overruled his counsel's objection to Kristen Ahlemeier's testimony that C.G. suffered from post-traumatic stress disorder. Defendant contends that Ahlemeier, a licensed professional counselor, was not qualified to render that opinion.

The Missouri Supreme Court has considered a case where a department of corrections employee, Gerald Hoeflein, who was in the process of becoming a licensed counselor, testified in a trial to determine if Joseph Johnson was a sexually violent predator under section 632.480(5) RSMo. 2000. *In the Matter of Joseph Johnson v. State*, 58 S.W.3d 496 (Mo. banc 2001). Hoeflein opined that "based on 'a reasonable degree of professional certainty,' that Johnson suffers from 'antisocial personality disorder' and 'paraphilia,' which Hoeflein believed were 'mental abnormalities' as defined by the statute, and that Johnson 'is more likely to commit crimes of a violent predatory sexual nature.' " *Id.* at 498. The jury found that Johnson was a sexual-ly violent predator and the trial court ordered Johnson committed to the custody of the director of the department of mental health for control, care and treatment in the sexually violent offender treatment and evaluation program. *Id.* at 498.

On appeal, Johnson argued that the trial court erred when it permitted Hoeflein to offer opinions regarding whether Johnson suffered from a mental abnormality that made it more likely than not that he would engage in predatory acts of sexual violence. *Id.* Johnson contended that Hoeflein was not qualified as an expert to render those opinions because he was neither a psychiatrist or psychologist, and even if he were licensed as a professional counselor, he would not be permitted to make diagnoses of mental abnormalities. *Id.* The court held that persons who are licensed medical doctors practicing psychiatry, licensed psychologists, and licensed social workers are permitted by law to evaluate persons and make diagnoses of mental disorders. *Id.* at 499. The court stated that " '[p]rofessional counseling' and 'practice of professional counseling', phrases defined in section 337.500 [RSMo.2000], are not defined to include 'diagnoses of any sort', but do include "[a]ppraisal or assessment, which means selecting, administering, scoring, or interpreting instruments designed to assess a person's ... aptitudes, intelligence, attitudes, abilities, achievement, interests, and personal characteristics.' " *Id.* In reversing the judgment, the court held that while Hoeflein's experience treating sex offenders conceivably qualified him to testify as an expert on many issues, diagnoses of mental disorders was not "even arguably within his

---

4. Section 566.100.1 RSMo. Supp.1993 provided that "[a] person commits the crime of sexual abuse in the first degree if ... (2) He subjects another person who is less than twelve years old to sexual contact." "Sexual Contact" was defined as "any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010.1(3) RSMo. Supp. 1993.

area of expertise, and his testimony on that point should have been excluded." *Id.* at 499.

■ Here, Ahlemeier testified that she was licensed by the State of Missouri as a professional counselor and had a "master of education in counseling." Ahlemeier further testified that she used the Diagnostic and Statistical Manual (Manual) written by the American Psychiatric Association in determining what disorders C.G was suffering from. Based on C.G.'s symptoms and her talking to C.G., Ahlemeier gave her opinion that C.G. suffered from post-traumatic stress disorder as defined in the Manual. Under section 337.500 and the analysis in *Johnson*, Ahlemeier was not qualified to render an opinion that C.G. suffered from post-traumatic stress disorder.

■■ The erroneous admission of evidence does not, however, mandate reversal in every case. When the trial court errs, "reversal is required if the error more-likely-than-not prejudices the entire proceeding against the defendant." *State v. Roberts*, 948 S.W.2d 577, 592 (Mo. banc 1997); *see State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000). "This kind of prejudice is outcome-determinative and expresses a judicial conclusion that the erroneously admitted evidence so influenced the jury that when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *Id.*

■ Credibility was a paramount issue in this case.[5] Ahlemeier stated it was "very common" when asked whether it would be consistent with C.G. suffering from post-traumatic stress disorder to delay reporting sexual abuse. Ahlemeier

also testified that C.G. never gave any details as to the incidents and this was consistent with her diagnosis. During closing argument, the prosecutor referred to Ahlemeier's conclusion that C.G. suffers from post-traumatic stress disorder. Under these circumstances, the judgment entered as to Counts II, III and IV must be reversed and the cause remanded as to these counts.

The judgment entered on Count I for sodomy is reversed. The judgment entered on Count II for sodomy and on Counts III and IV for sexual abuse in the first degree is reversed and remanded for further proceedings.

---

5. Defendant denied that C.G. touched his penis or that he touched C.G.'s penis.