**STATE of Missouri, Respondent,**

v.

**Michael BENWIRE, Appellant.**

**No. WD 60333.**

Missouri Court of Appeals, Western District.

Jan. 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2003.

Application for Transfer Denied April 1, 2003.

---

Kent Denzel, Asst. State Public Defender, Columbia, Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Nicole E. Gorovsky, Asst. Attorney General, Jefferson City, Respondent.

Before EDWIN H. SMITH, P.J., JAMES M. SMART, JR., and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Michael D. Benwire appeals his conviction by a jury of first degree child molestation, for which he was sentenced to six years imprisonment. Benwire contests the sufficiency of the evidence to support his conviction and contends that the trial court abused its discretion in admitting certain evidence at trial.

## Factual Background

Michael Benwire was charged with statutory sodomy in the first degree, § 566.062, RSMo 2000. The charge asserted that on or about March 23, 2000, the defendant had deviate sexual intercourse with a child less than fourteen years old. Benwire, denied the allegations. At a pre-trial § 491.075 hearing, the court determined that out-of-court statements made by the seven-year-old victim could be introduced at trial because they contained sufficient indicia of reliability to qualify for admission under the statute.

Benwire's jury trial was held in the Dekalb County Circuit Court on May 21, 2001. The jury convicted Benwire of the lesser offense of first degree child molestation, § 566.067, RSMo 2000, and recommended a six-year sentence. On August 9, 2001, the court sentenced Benwire in accordance with that recommendation. Benwire now contests the sufficiency of the evidence to support that conviction on appeal.

The facts are presented in the light most favorable to the verdict. See *State v. Driscoll*, 55 S.W.3d 350, 351–52 (Mo. banc 2001). In late March of 2000, Michael Benwire was living with a family that included seven-year-old K.T., the victim of the molestation. Seventeen-year-old Benwire was unrelated to the family but evidently had been living with them since around Christmas of 1999. Also living in the home were K.T.'s mother, her younger sister, her mother's boyfriend, and the boyfriend's daughter.

The allegation that Benwire had sexually abused K.T. came to light when K.T. was at a friend's house sometime in late March 2000 and she kissed a little boy on the mouth. Her older friend told her that she needed to wait until she was older to do that, and K.T. replied that she "already knew about sex because Michael had been teaching her." When K.T.'s father learned what K.T. had said, he took her to the Cameron Police Station on March 26, 2000.

At the police station, K.T. was interviewed by two officers, Judy Becker and Terry Lewis. The interview was both videotaped and audiotaped (evidently because the videotape contained no audio). K.T. told the officers that the last time this happened "must have been on Thursday, because I don't spend Friday nights at Mommy's when I go to see my dad." Asked about the difference between a good touch and a bad touch, K.T. explained that a bad touch was touching what she called her "forbidden soul area." When asked what her "forbidden soul area" was, K.T. gestured to between her legs and said that it was "where you go to the bathroom." K.T. told the officers that appellant had touched her forbidden soul area with his mouth, his hands, and his forbidden soul area. K.T. described appellant's forbidden soul as "long, round at the end of it, and [it] had hair around it." K.T. told the officers that this had happened "many times" and that after her mother went to bed, Benwire would come into her bedroom. K.T. said that the abuse happened when she was asleep, but she also stated that by "fall asleep" she meant that she was "staying in my bedroom, watching a movie."

A few days later, K.T. was interviewed by Lieutenant Carol Cummings, a forensic interviewer at the Northwest Missouri Children's Advocacy Center. At that videotaped interview, K.T. indicated to Lieutenant Cummings by way of a diagram that Benwire had touched her vaginal area. She gave the interviewer essentially the same information she had given the officers and used the same terminology for her genital area. She also indicated that Benwire's "forbidden soul" area was his penis. K.T. told Lieutenant Cummings

that Benwire touched her at night and that she was asleep when he did it. She said Benwire told her he had done these things to her, and every night before she went to bed he would ask her if he could do these things to her.

K.T. was counseled at the child advocacy center by Joyce Estes. She told Ms. Estes that she knew she was there "because Michael did bad stuff." K.T. also told Ms. Estes that Benwire had rubbed her "forbidden soul" with his hand and with his mouth. K.T. indicated to Ms. Estes that her forbidden soul was her vaginal area by pointing to her own crotch area. In their first session, K.T. told Ms. Estes:

> [T]hat it happened in her room; that Michael had showed her about sex; told her to take her clothes off, so she did; and that he rubbed her while they were watching "Casper the Ghost." I asked her if it felt good or bad, and she said, "It felt good."

K.T. told Ms. Estes that the incidents happened in her room at the family home, but that once the appellant rubbed her vaginal area with his mouth and hand when they were in her sister's room in the daytime.

At trial, K.T. took the stand to testify, but her testimony was very difficult to follow. On direct examination, she twice failed to identify the appellant in the courtroom; and, although Benwire had lived with K.T.'s family for over three months, K.T. said that he "almost never" came over to her house. Finally, after stating that she remembered telling Corporal Becker that Benwire did some "awful things" to her, she was able to identify him in the courtroom.

On cross-examination, K.T. agreed that she did not remember anything happening; that she was asleep when it happened; that she did not feel anything; that she did not hear anything; and that she did not

think Benwire did anything. She also testified, however, that when she told the officers that Benwire did some awful things to her, she *was* telling the officers the truth. K.T. testified that she told the officers Benwire did "lots of things" but could not say what they were because, she said, "I don't like saying those words. I'm not allowed to." On recross, K.T. told defense counsel that she had told the three officers and Ms. Estes the "truth about everything." She stated, "I told them all the truth."

Benwire took the witness stand in his own defense and denied that he had touched K.T.'s vagina. He also denied asking to do so while she was asleep or telling her that he had done so.

The jury convicted Benwire of first degree child molestation, and the court sentenced him to six-years imprisonment. Benwire appeals his conviction to this court.

## Need for Corroboration

Benwire asserts that the evidence was not sufficient to prove beyond a reasonable doubt that he touched K.T.'s genitals. Benwire argues that because K.T. denied at trial that anything happened, the testimony of her prior out-of-court statements, presented under § 491.075, must be corroborated because that evidence was so inconsistent and contradictory as to deprive it of any probative force. Benwire cites *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995), for the proposition that, in cases of sexual offenses, where the evidence is so contradictory that it is deprived of probative force, the testimony must be corroborated.

In considering the sufficiency of the evidence in a criminal case, this court views the evidence, together with all reasonable inferences drawn therefrom, in the light

most favorable to the verdict and disregards all evidence and inferences to the contrary. *State v. Grim,* 854 S.W.2d 403, 405 (Mo. banc 1993). "[R]eview is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Silvey,* 894 S.W.2d at 673 (quoting *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989)).

■■■ In this point, Benwire appears to be arguing: (1) that K.T. completely denied on the witness stand that anything happened, and therefore this case, like *State v. Pierce,* 906 S.W.2d 729 (Mo.App. 1995), should be reversed; [1] (2) that K.T.'s in-court testimony was so contradictory and inconsistent that the corroboration rule is triggered; [2] and (3) that testimony concerning K.T.'s out-of-court statements presented pursuant to § 491.075 cannot alone support the conviction without those statements themselves being corroborated.

■■■ It is not necessary to address all of Benwire's somewhat conflicting theories, because the evidence of K.T.'s out-of-court statements alone was enough to support the conviction. Here, where K.T.'s out-of-court statements were admitted pursuant to § 491.075 after a hearing to determine their reliability,[3] corroboration was not necessary. Out-of-court statements by a child under the age of twelve admitted under the provisions of § 491.075 are considered substantive evidence of the truth of the matter asserted. § 491.075.1. Such statements, and any reasonable inferences that may be drawn from those statements, "may alone constitute substantial evidence of an element of the offense charged." *State v. Goad,* 926 S.W.2d 152, 156 (Mo. App.1996).

K.T.'s out-of-court statements were admitted under the provisions of § 491.075 after a hearing and could properly be considered by the jury as substantive evidence of the truth of her claim that the appellant touched her genitals. *Goad,* 926 S.W.2d at 156. K.T.'s descriptions of the abuse, including her statements that Benwire touched her "forbidden soul" (vaginal area) with his hand, mouth, and his "forbidden soul" (penis) were consistent in all of the § 491.075 statements. The fact that K.T. was clearly able to describe appellant's forbidden soul area was also corroborative. And, although K.T. told Corporal Becker, Officer Lewis, and Lieutenant Cummings

---

1. *Pierce* is distinguishable from this case in at least two respects. First, in *Pierce,* not only did the victim recant, but by the time the case was brought to trial, every other witness had recanted. 906 S.W.2d at 734–35. Thus, the court found that there was insufficient evidence to convict because there was no other corroboration of the crime. *Id.* Also, the victim's prior statement in *Pierce* was admitted under § 491.074, the statute that allows for a prior inconsistent statement of any witness in a criminal trial to be received as substantive evidence. *Id.* at 733–34. Here, the prior statements were admitted under § 491.075, which specifically allows of an out-of-court statement of a child under twelve as substantive evidence if the court determines that the statement has sufficient indicia of reliability.

2. The corroboration rule is applicable only to the victim's trial testimony and not to conflicts between the victim's testimony and the victim's out-of-court statements. *State v. Griggs,* 999 S.W.2d 235, 241 (Mo.App.1998). It is triggered where the victim's testimony is "so contradictory or inconsistent as to deprive it of all probative force." *Silvey,* 894 S.W.2d at 673. Although K.T.'s testimony was somewhat contradictory, it does not rise to this level.

3. Section 491.075 provides adequate safeguards to ensure reliability, in that, under the statute, the court must find, after a hearing conducted outside the presence of the jury, that the "time, content and circumstances of the statement provide sufficient indicia of reliability." 491.075.1(1).

that she was asleep when Benwire touched her, she also told the officers that when she said "fall asleep" she meant she went into her bedroom and watched a movie. K.T. said that an incident occurred while she watched a movie in her bedroom. She told Ms. Estes that Benwire "told her to take her clothes off, so she did"; that he rubbed her while they were watching "Casper the Ghost"; and when asked, she told Ms. Estes that "it felt good." K.T. also told Ms. Estes that Benwire suggested that they go to her sister's room and that he had rubbed her vaginal area with his mouth and hand in her sister's room in the daytime.

K.T.'s statements to Ms. Estes implied that she was awake when the appellant touched her genitals, and her statements to the officers and Lieutenant Cummings that she was asleep are not so inconsistent and contradictory, in light of the articulation abilities of a young child, as to deprive them of probative force. Testimony was presented that it is not unusual for children who are victims of sexual abuse to say that they were asleep when it happened or that they dreamed that it happened. Such a statement, according to experts, may reflect a young child's confusion about what happened to them while they were in bed or may act as a defense mechanism to rid themselves of blame for what happened.

■ In this case, the child victim was unable to testify effectively on the witness stand. That is the reason § 491.075 allows the out-of-court statements of a child to be introduced in court as an exception to the hearsay rule. Because "a young child can be easily intimidated into not testifying about [such] offenses ... making their detection and prosecution very difficult, if not impossible," the legislature enacted § 491.075. *State v. Bass*, 81 S.W.3d 595, 602 (Mo.App.2002). Section 491.075 "re-

flects a policy determination" by the legislature that in some child abuse cases, the victim's out-of-court statements may "be *more* reliable than the child's testimony at trial, which may suffer distortion by the trauma of the courtroom setting or become contaminated by contacts and influences prior to trial." *State v. Wright*, 751 S.W.2d 48, 52 (Mo. banc 1988) (emphasis in original). Furthermore, "[i]t is not uncommon for there to be some contradiction or memory lapses during the testimony of a child of tender years." *State v. Griggs*, 999 S.W.2d 235, 242 (Mo.App.1998) (quoting *State v. Harvey*, 641 S.W.2d 792, 800 (Mo.App.1982)).

In *Griggs*, 999 S.W.2d at 243, the court upheld the conviction that was based entirely on the victim's out-of-court statements received pursuant to § 491.075. Also, in *State v. Blue*, 811 S.W.2d 405 (Mo.App.1991) and *State v. Fraction*, 782 S.W.2d 764 (Mo.App.1989), the out-of-court statements were found sufficient to convict even though the respective victims denied the accusations at trial.

In this case, the victim's out-of-court statements, described above, were properly admitted under the provisions of § 491.075 and were properly considered by the jury as substantive evidence of the truth of the allegations against the defendant. *Goad*, 926 S.W.2d at 156. Benwire does not contest the court's finding at the pre-trial hearing that these out-of-court statements possessed sufficient indicia of reliability, as required by the statute. The out-of-court statements, once determined to be admissible, constitute substantial evidence which, if sufficiently detailed, may support a conviction. Here, the statements were not so inconsistent and contradictory as to deprive them of any probative force, and they provided sufficient evidence from which a jury could reasonably

have found that the appellant was guilty of touching K.T.'s genitals. Point denied.

### *Corpus Delicti* Rule:

Benwire's second argument is that the trial court erred in overruling his objections and in admitting his extrajudicial statements as substantive evidence of guilt because doing so violated the *corpus delicti* rule. He contends that there was no independent proof of the *corpus delicti* of child molestation, apart from his statements to K.T. about what he was doing to her at night, because K.T. testified that he did not do anything to her and told the officers that she was asleep and only knew what happened because Benwire had told her.

This court's review of the trial court's decision to admit testimony is limited to whether such decision was an abuse of discretion. *Griggs*, 999 S.W.2d at 244 (citing *State v. Redman*, 916 S.W.2d 787, 792 (Mo. banc 1996)).

During the State's direct examination of Lieutenant Cummings, it was revealed, over appellant's objection, that K.T. told the lieutenant the appellant "told her [K.T.] he had done these things to her and that every night before she went to bed he would ask her if he could do these things to her." Benwire claims that this statement was inadmissible since the *corpus delicti* of child molestation had not been established.[4] Specifically, appellant claims that his statement was inadmissible to establish that he had touched K.T.'s genitals.

The *corpus delicti* rule deals specifically with whether a defendant's confession of guilt may be considered substantive evidence of guilt. *State v. Craw-ford*, 32 S.W.3d 201, 205 (Mo.App.2000). "Generally, the State must prove the commission of a crime with evidence independent of a confession of the accused." *Id.* It is axiomatic that the state has the burden of proving the *corpus delicti*, *i.e.*, the substantive elements of the charged offense. *State v. Hahn*, 35 S.W.3d 393, 396 (Mo.App.2000). The *corpus delicti* may not be presumed, but it may be proved through direct or circumstantial evidence. *Crawford*, 32 S.W.3d at 205. However, absent any independent proof, circumstantial or direct, of the *corpus delicti*, a defendant's extrajudicial confession is not admissible. *State v. McVay*, 852 S.W.2d 408, 414 (Mo.App.1993).

"Once evidence other than the defendant's confession shows that a crime was committed by someone, then defendant's confession is admissible." *Crawford*, 32 S.W.3d at 205. Proof of the *corpus delicti* and an admission can then be considered together and the sum of the two can go to prove the essential elements of the crime. *Id.* In order for defendant's statement to be admissible, absolute proof that a crime was committed independent of his or her statement is not required. *Hahn*, 35 S.W.3d at 396. Only slight corroborating facts are required to establish the *corpus delicti*. *Id.*; *Crawford*, 32 S.W.3d at 205; *McVay*, 852 S.W.2d at 414.

Benwire contends that without introduction of his statement to K.T., there was no proof that a crime occurred. He contends that K.T. could not say that it happened otherwise. According to Benwire, K.T.'s statements did not change in significant respects from interview to interview on this point, except that in her interview

---

4. The *corpus delicti* consists of two elements: (1) proof, direct or circumstantial, that the specific loss or injury charged occurred, and that (2) someone's criminality was the cause of the loss or injury. *State v. Benton,* 812 S.W.2d 736, 740 (Mo.App.1991).

with Ms. Estes, where she was not asked about being asleep, she did not mention it.

■ Benwire's *corpus delicti* argument fails because there was other evidence of the *corpus delicti*, specifically, K.T.'s out-of-court statements that were properly admitted pursuant to § 491.075. Section 491.075.2 states:

[A] statement by a child when under the age of twelve who is alleged to be victim of an offense under chapter 565, 566 or 568, RSMo, *is sufficient corroboration of a statement, admission or confession* regardless of whether or not the child is available to testify regarding the offense.

(emphasis added).

Here, there was independent evidence to corroborate the appellant's statement to K.T. Therefore, the statement was admissible. K.T.'s out-of-court statements to Corporal Becker, Officer Lewis, Lieutenant Cummings, and Ms. Estes were properly admitted under § 491.075.1 and were properly considered as substantive evidence of the truth of the matter asserted, namely that appellant touched K.T.'s genitals. *Goad*, 926 S.W.2d at 156. Benwire is wrong in his contention that none of K.T.'s out-of-court statements show that a crime occurred without reference to his admissions to her. K.T.'s statements to Ms. Estes are especially indicative that a crime occurred. K.T. did not tell Ms. Estes that she only knew it happened because Benwire told her about it.

Only *slight* corroborating facts are sufficient to establish the *corpus delicti*. *Hahn*, 35 S.W.3d at 396. The evidence in this case provides more than sufficient cor-

roboration, in conjunction with Benwire's statement, to establish the *corpus delicti* for child molestation. Thus, the appellant's statements to K.T. were properly admitted.

### Section 492.340 and the Audiotape:

Finally, Benwire contends that the trial court erred and abused its discretion in permitting the State to play the audiotape of K.T.'s interview with Officers Becker and Lewis, in that § 492.304 requires that a tape of a child's interview be both visual and aural.[5]

The trial court's admission of evidence should not be disturbed absent an abuse of discretion. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). But, the question of whether the trial court correctly interpreted and applied a statute is a question of law, which this court reviews *de novo*. *Bass*, 81 S.W.3d at 602.

The statute in question, § 492.304, states in relevant part:

1. In addition to the admissibility of a statement under the provision of Section 492.303, the visual and aural recording of a verbal or nonverbal statement of a child when under the age of twelve who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568, RSMo, is admissible into evidence if:

\* \* \* \* \* \*

(2) The recording is both visual and aural and is recorded on film or videotape or by other electronic means[.]

\* \* \* \* \* \*

Benwire asserts that the court violated this statute by permitting the State to play

---

**5.** The State contends that this issue was not preserved for appeal and is reviewable for plain error only, because the objection at trial was made pursuant to § 491.075, not § 492.304. The State is incorrect. At trial,

defense counsel objected to the playing of the audiotape specifically on the basis that the tape must be both visual and aural pursuant to § 492.304.

at trial an audiotape of the Becker and Lewis interview. He further contends that the basis for the court's ruling—that the tape constituted a statement admissible under § 491.075—is flawed because, if this were the correct interpretation, there would be no reason for the requirement in the statute that the recording be *both* visual and aural. "If every recording is considered a child's 'statement' under § 491.075," Benwire argues, then *a fortiori*, any audio recording would be admissible under § 491.075, and such an exception to § 492.304 would overwhelm the requirement of § 492.304(2) that the recording be both visual and aural.

The State responds that the trial court did not err in admitting the audiotape of K.T.'s interview under § 491.075. That statute provides that "[a] *statement* made by a child under the age of twelve . . . not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings . . . as substantive evidence to prove the truth of the matter asserted if . . . [after] a hearing conducted outside the presence of the jury" the court finds that the "time, content and circumstances of the statement provide sufficient indicia of reliability;" and the child testifies at the proceedings. § 491.075.1 (emphasis added).

■ Here, the court held a pre-trial § 491.075 hearing regarding the admission of K.T.'s out-of-court statements. The court determined that the statements in question were made in accordance with § 491.075 requirements and possessed sufficient indicia of reliability. The statements met all the requirements of § 491.075, and thus were properly admitted under that statute. The court specifically ruled that the audiotape was admissible pursuant to § 491.075. That statute does not specify that the statement must be received through the testimony of a person; it merely states that the out-of-court statement of the child is admissible if it meets certain criteria.

Despite Benwire's argument that § 491.075 is limited by the requirement of § 492.304.1(2) that the recording be both visual and aural, the following reference to § 491.075 appears in § 492.304:

2. If the child does not testify at the proceeding, the visual and aural recording of a verbal or nonverbal statement of the child shall not be admissible under this section *unless the recording qualifies for admission under section 491.075 RSMo.*

(emphasis added). Recordings that do not meet the criteria for § 492.304 may still be admissible if they qualify for admission under § 491.075. Further evidence that § 492.304 does not exclusively govern the admission of recordings of the statement of a child under twelve in these cases is the fact that there are numerous instances in which such recordings have been admitted into evidence pursuant to § 491.075. See, *e.g., State v. Russell,* 872 S.W.2d 866 (Mo.App.1994); *State v. Olson,* 854 S.W.2d 14 (Mo.App.1993); *State v. Robinson,* 782 S.W.2d 694 (Mo.App.1989).

In *State v. Bohanon,* 747 S.W.2d 294, 299 (Mo.App.1988), where a videotape was purportedly admitted under § 491.680 but did not meet the requirements under that statute, the court found that the tape would have been admissible under § 492.304. The court stated that "if the videotape interviews were competent evidence under any theory, the trial court did not err in admitting the same." *Id.* Here, the court specifically admitted the audiotape under the theory that the out-of-court statements contained therein qualified for admission pursuant to § 491.075. The court did not err in admitting the audiotape.

■ Benwire also argues that admitting the audiotape allowed the State to unfairly bolster K.T.'s testimony by letting the jury hear the same statement three different times in that the jury already had heard the two officers testify about that same interview. The State correctly points out that the appellant failed to properly preserve this alleged error for review. "The ground of an objection on appeal is limited to that stated at trial." *State v. Gillard,* 986 S.W.2d 194, 198 (Mo.App. 1999). Although the defendant objected to the audiotape based on "bolstering" in an oral pretrial motion, the objection was overruled. The defendant did not lodge a "bolstering" objection at the time the audiotape was introduced at trial, nor did he do so in his motion for new trial. The "[d]efendant is required to make a timely and specific objection at the time the evidence is sought to be introduced" to preserve it for appellate review. *State v. Hill,* 929 S.W.2d 258, 262 (Mo.App.1996). The appellant's bolstering argument is therefore considered a new ground of objection on appeal, and this court need not review this alleged error for that reason. See *Gillard,* 986 S.W.2d at 198.

■ Benwire also complains that "he could not cross-examine the tape about K.T.'s demeanor, body language, and facial expressions during the interview," which, according to Benwire, is the "very reason for the requirement that there be video." We fail to see that the introduction of the audiotape was any more than the introduction of a witness' testimony concerning the child's statement. The trial court retains discretion in both instances. In any event, the requirements of the Confrontation Clause were satisfied when K.T. testified at trial and was subject to cross examination. See *Silvey,* 894 S.W.2d at 672. There was no abuse of discretion in the admission of the audiotape.

## Conclusion

For the foregoing reasons, the judgment is affirmed.

EDWIN H. SMITH and HARDWICK, JJ., concur.