STATE of Missouri, Respondent,

v.

Raymond RAY, Appellant.

Raymond RAY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17733 and 18237.

Missouri Court of Appeals,
Southern District,
Division Two.

April 26, 1993.

Raymond L. Legg, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Presiding Judge.

A jury convicted Raymond Ray (Defendant) of sodomy, a class B felony. He was sentenced to thirteen years' imprisonment and appeals from that conviction in Case No. 17733.

Afterwards, Defendant filed a motion for postconviction relief under Rule 29.15.[1] An evidentiary hearing was held on his amended motion. The motion court entered Findings of Fact and Conclusions of Law deny-

1. Rule references are to Missouri Rules of Court (1992).

ing the relief requested. Defendant appeals from that denial in Case No. 18237. Pursuant to Rule 29.15(*l*) we consolidated the appeals which will be separately addressed herein.

### No. 17733

In this appeal, Defendant presents five claims of error, one of which alludes to the sufficiency of the evidence. In reviewing Defendant's conviction for sodomy, we consider the evidence in the light most favorable to the verdict rendered by the jury. *State v. Norris*, 813 S.W.2d 379, 380 (Mo. App.1991).

So viewed, the evidence reveals that on January 11, 1991, eight-year-old C.G. and her younger brother were living with their mother Shiela Hillis and Defendant in his home. On January 15, 1991, Hillis filed a sworn complaint with the New Madrid Sheriff's Department which stated on January 11, 1991, she had seen Defendant between her daughter's legs, licking her vagina.

Laura Wilburn of the Division of Family Services (DFS) interviewed C.G. on January 15, 1991, and the next day videotaped an interview with the child-victim. In the videotaped interview, C.G. marked, in her own words, the "wrong spot" on a diagram where Defendant had been licking between her legs. The jury observed the videotaped interview after Defendant objected on the basis the videotape was "cumulative and prejudicial."

C.G. testified at trial that Defendant had licked "in the private" between her legs on three occasions. On the last occasion, her mother came in the room while Defendant was engaged in the described act with C.G.

Hillis[2] testified her original complaint against Defendant was untrue and she had told her daughter what to tell the authorities. Hillis stated she concocted the story because she was mad at Defendant after he had "kicked" her out of his home. Previous to trial Hillis had attempted to have the charges dropped against Defendant.

**2.** On February 1, 1991, Hillis married Defendant. For simplicity, we will refer to her by her previous name.

Defendant's trial testimony agreed with Hillis that he had kicked her out of his home causing her to be angry. Shortly thereafter, he was charged with the instant offense. He vehemently denied any sexual encounter with C.G.

▮ Defendant's first point alleges the trial court erred in admitting into evidence the videotape of the interview with C.G. in that the cumulative effect of the hearsay statements improperly bolstered C.G.'s credibility.

Defendant mainly relies on *State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987), where the Supreme Court held that the State's introduction of a videotaped interview with a child-victim, followed by the child-victim's own testimony, resulted in improper enhancement and rehabilitation which prejudiced the defendant. Both the videotaped statement and the child-victim's testimony covered the same precise ground. The Court said, "This bolstering is a departure from the normal course of trial proceedings." *Id.* at 441.

The trial proceedings in the instant case reveal a sharp contrast to those in *Seever*. Here, C.G. was cross-examined in the following manner:

Q. ... Do you remember telling me that they [referring to "DFS people"] coached you, or helped you remember what to say?

A. Yes.

Q. And they've helped you remember what to say here today, haven't they?

A. Yes.

Q. They weren't there in that room when whatever happened happened, were they?

A. Umm—

Q. The people from D.F.S.?

A. No.

    \*      \*      \*      \*      \*      \*

Q. Did they tell you that you had to testify here today?

A. Yes.

Q. Did they tell you that if you didn't testify here today that you wouldn't be able to see your mother again?

A. Yes.

Q. They did tell you that, that you had to testify here today or you wouldn't get to see your mother again; they told you that?

A. Yes.

During recross-examination, the following exchange occurred:

Q. Do you remember when this happened?

A. I can't remember.

Q. You can't remember the day?

A. Uh-huh.

Q. Can you remember the month?

A. No.

Q. Do you remember anything about that day, other than what you've said here today?

A. No.

Q. Do you remember what you did after this occurred?

A. No.

Q. You don't remember anything else about the day?

A. No.

Q. Do you remember anything about the day before this, before this happened?

A. No.

This examination of C.G. raised an inference she fabricated her story and attacked her credibility. The videotaped interview was not introduced until after Defendant's attack on C.G.'s credibility. C.G.'s description of the sexual encounter in the videotaped interview on January 16, 1991, was entirely consistent with her trial testimony.

In *State v. Robinson*, 782 S.W.2d 694 (Mo.App.1989), the child-victim testified in a rape and sodomy case. After defendant attacked her credibility the state introduced her videotaped statement which was consistent with her trial testimony. Relying on *State v. Johnson*, 684 S.W.2d 581, 583 (Mo. App.1984), the Court said that "[p]rior consistent statements of a witness may be admissible in order to rebut an inference of recent fabrication which is raised by appellant on cross-examination of the witness." *Robinson*, 782 S.W.2d at 697. Continuing, the Court noted that "any evidence tending to permit the inference that the testimony of the witness is recently fabricated opens the door to the introduction of the statement consistent with the witness' testimony if made prior to the suggested fabrication." *Id., quoting State v. Hanson*, 735 S.W.2d 100 (Mo.App.1987).

In the instant case the videotaped statement was made prior to the suggested fabrication. It was admissible to rehabilitate C.G.'s credibility after Defendant's cross-examination raised the inference C.G.'s testimony had been fabricated.

By revealing to the jury that C.G. had made prior consistent statements, the State was attempting to rebut an inference of recent fabrication. *Seever* does not apply under these circumstances. Defendant's first point is denied.

■ In Point II, Defendant contends the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence that the "area [Defendant] was alleged to have licked was [C.G.'s] genitalia."

In reviewing a challenge to the sufficiency of the evidence, "the evidence, together with all reasonable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and evidence and inferences contrary to the verdict are ignored." *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied*, — U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). We look only to whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Nelson*, 818 S.W.2d 285, 288 (Mo.App.1991).

The crime of sodomy is established by proof of an act of deviate sexual intercourse with a victim less than fourteen years old, to whom the defendant is not married. § 566.060.3.[3] Deviate sexual in-

---

**3.** Statutory references are to RSMo 1986 unless    otherwise indicated.

tercourse is defined as any sexual act involving the genitals of one person and the mouth, tongue, hand or anus of another person. § 566.010.1(2). In *State v. Hooker*, 791 S.W.2d 934, 938 (Mo.App.1990), this Court noted the definition of "genitals" or "genitalia" as "the organs of the reproductive system; *esp.* the external genital organs," citing from Webster's New Collegiate Dictionary 479 (1974).

Defendant "asserts that the state failed to prove that he licked [C.G.'s] genitalia when [C.G.] only testified that [Defendant] had licked her 'in the private' between her legs." This assertion ignores the videotape where C.G. marked a spot on the diagram and Laura Wilburn's testimony that C.G. called the place between her legs the "wrong spot." It further ignores the sworn statement, received in evidence, of C.G.'s mother that she saw Defendant licking her daughter's vagina. Although Hillis testified her statement was untrue, it is within the jury's province to believe all, some, or none of any witness's testimony in arriving at its verdict. *Nelson*, 818 S.W.2d at 288.

Clearly, a reasonable inference from C.G.'s testimony alone was that Defendant's acts constituted deviate sexual intercourse, i.e., the involvement of Defendant's mouth and C.G.'s genitals. *See Hooker*, 791 S.W.2d at 938. Her reference to "wrong spot" or "in the private" does not render the evidence insufficient. In *State v. Lachterman*, 812 S.W.2d 759 (Mo.App. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992), defendant complained of insufficiency of the evidence based upon the failure of an eleven-year-old victim to specifically identify body parts. The victim testified defendant touched him "down below" with his hands and mouth. That term meant to the victim where he went to the bathroom. The victim further testified defendant made him touch the defendant "down below" with his hand and to "jack him off." The Court found this testimony sufficient to support submission to the jury one count of oral sodomy and one court of manual sodomy by saying:

> In a prosecution of sodomy of a child, the name by which body parts are identified

is a "collateral matter" *State v. Webb*, 737 S.W.2d 197, 200 (Mo.App.1987), of no material significance under all the evidence in the case. Despite [the victim's] lack of specificity it is clear he was describing the defendant touching his penis with his mouth and requiring him to touch defendant's penis with his hand.

*Id.* 812 S.W.2d at 770.

Even though C.G. was not specific in her testimony, it is abundantly clear she was referring to the Defendant touching her genitals with his mouth. Based on *Lachterman*, this testimony is sufficient to sustain Defendant's conviction and we rule this point against him.

Defendant's third point alleges the trial court abused its discretion, in violation of Defendant's right to due process and a fair trial, by failure to retain its proper role as a neutral, detached, fair and impartial arbiter because, at sentencing, the trial court informed Defendant that it had not looked upon him as an innocent man in the case.

Defendant's complaint arises from the sentencing hearing where the trial court said:

> THE COURT: Mr. Ray, of course, I've heard the evidence of trial; I've had an opportunity to read the report before me here today. Mr. Bock is correct when he said we have a young victim in this case. I know that you maintained your innocence prior to this offense. A jury of 12 gave you a sentence of this conviction and you know I'm not going to stand up here and say, well I'm going to give you a break because I believe you might be innocent, because you still maintained your innocence. I'm proceeding as if you were guilty, because the jury unanimously agreed as to your guilt and I believe that the State proved you're guilty beyond a reasonable doubt. I did not look upon you as an innocent man in this case. That is a serious offense and it involves a young victim that had no way to defend herself; no way to strike back. I remember her testimony here today. That's basically her only way to defend herself and to strike back was to get up

here and tell people what happened and to get up here upon the witness stand I give this little girl a lot of credit for using the system and allowing the system to work in cases like that—like this. That is a serious offense and it could have been more serious unless it was stopped. I don't know what it meant to you, but the court having reviewed all the information, the Court here today does hereby order that it was a sentence judgement of this Defendant that he be sentenced to a 13 year term in the Missouri Department of Corrections.

As noted by the State, Defendant failed to object to these comments by the trial judge nor did he request the judge to recuse himself. Generally, an objection must be timely made in order to preserve error for appellate review and the objection must usually be made at the earliest opportunity to allow the trial judge to take corrective action. *State v. Helm*, 624 S.W.2d 513, 516 (Mo.App.1981).

Here, Defendant's silence gave the trial judge no opportunity to consider the present complaint before us. While error exists when a judge exhibits a manner prejudicial to the defendant, an objection must be made or the error will be considered waived, unless the effect is so prejudicial that it cannot be removed. *State v. Sykes*, 628 S.W.2d 653, 655 (Mo.1982). Since the trial court's comments went unchallenged, we need only consider whether the prejudicial impact of the comments was so grievous as to have resulted in manifest injustice or a miscarriage of justice constituting plain error. Rule 30.20.

Defendant's argument fails to describe any prejudice he suffered from the court's comments. Actually, viewed in context, the court only indicated it did not view Defendant as innocent because the jury unanimously found him guilty. Furthermore, the comment was in response to Defendant's insistence of his innocence.

The record fails to demonstrate any prejudice to Defendant. The trial judge ruled favorably to Defendant when the State sought to charge him as a persistent offender and only allowed the State to charge

him as a prior offender. In addition, Defendant faced a maximum sentence on a class B felony of fifteen years' imprisonment. § 558.011. Yet, he was sentenced to less than the maximum. We find no manifest injustice or a miscarriage of justice resulting in plain error. This point lacks merit.

Defendant's fourth point asserts that the trial court plainly erred in failing to declare a mistrial, *sua sponte*, when the prosecutor stated in closing argument that:

### A.

[C.G.] was a little girl crying out for help from the jury, who should not turn New Madrid County into a haven for pedophiles and child abusers; and

### B.

Shiela Ray committed child abuse by dragging her daughter out to tell about being licked between the legs; and

### C.

The prosecutor, police, and DFS were working as hard as they could, and court personnel were doing their jobs in prosecuting child abusers such as appellant and now it was the jury's turn to do its job to protect [C.G.] and other children from appellant; and

### D.

While defense counsel was permitted to lead in questioning [C.G.], he was not, although he "couldda (sic) led her all over the courthouse if the Court had let me" but the prosecutor had "just asked her what happened."

Defendant believes these statements constituted arguments based upon facts not in evidence, attacked the professional ethics of Defendant's counsel, improperly personalized the case to the jury and implied that a conviction had the imprimatur of the trial court. We disagree.

Defendant acknowledges no objection was made to the prosecutor's argu-

ment nor was the issue raised in his new trial motion. In requesting plain error relief under Rule 30.20, Defendant further acknowledges that alleged error in closing argument justifies plain error relief only if its effect is decisive on the jury's determination. *State v. Wren*, 643 S.W.2d 800, 802 (Mo.1983).

Appellate courts should rarely grant relief on assertion of plain error as to closing argument. *State v. Clemmons*, 753 S.W.2d 901, 907 (Mo. banc 1988), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988). "This is because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Id.* 753 S.W.2d at 907–08.

■ Statements A and C are nothing more than arguments concerning the prevalence of crime in the community, the personal safety of its inhabitants, and the jury's duty to uphold the law. A prosecutor is clearly permitted to make such arguments. *State v. Cobb*, 820 S.W.2d 704, 712 (Mo.App.1991).

Defendant argues statement B was improper personalization that sought to inflame the passions and prejudices of the jury. With no explanation, Defendant fails to cite authority supporting this argument. He violates Rule 30.06(d). Points relied on without citation are deemed waived or abandoned. *State v. Meadows*, 785 S.W.2d 635, 641 (Mo.App.1990). Even when considered under a standard of plain error, we fail to see how statement B had a decisive effect on the jury's determination in view of C.G.'s unwavering testimony.

Statement D, according to Defendant, improperly attacked the professional ethics of defense counsel because a lawyer is entitled to ask leading questions during cross-examination. Defendant relies on *State v. Sarten*, 344 S.W.2d 1 (Mo.1961),

and *State v. Moomey*, 581 S.W.2d 899 (Mo. App.1979).

In *Moomey*, the controversy was whether the prosecutor, in closing argument, accused defense counsel of fabricating his client's defense. In *Sarten*, there was no issue concerning a prosecutor's improper closing remarks. Thus, neither case supports Defendant's argument.

Even if statement D was improper—an issue we do not decide—it was not flagrant enough to result in manifest injustice or a miscarriage of justice. Point IV is denied.

The fifth point is directed to the giving of Instruction No. 4, defining reasonable doubt, in the format patterned by MAI–CR 3d 302.04. This point is denied for the reasons given in *State v. Bogard*, 836 S.W.2d 87, 89 (Mo.App.1992).[4]

### No. 18237

In his last point on appeal, Defendant contends that the motion court clearly erred when it denied his Rule 29.15 motion which alleged that his trial counsel was ineffective for failing to call as defense witnesses Sheila Holifield, Martha Ellsworth, and Dr. Jan Finney, who would have testified concerning a previous false accusation by C.G. of a sexual touching by one of her classmates.

Defendant argues that these three witnesses would have impeached C.G.'s credibility by showing that she had previously made false accusations of a sexual touching.

Appellate review of a motion court's denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *Murray v. State*, 775 S.W.2d 89, 90 (Mo. banc 1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1171, 107 L.Ed.2d 1073 (1990). Findings and conclusions are clearly erroneous only if after review of the entire record the court is left with a definite and firm impression that a

**4.** One of the cases cited in *Bogard* is *State v. Griffin*, 818 S.W.2d 278 (Mo. banc 1991). That opinion has been withdrawn and reissued with certain corrections. *See State v. Griffin*, 848 S.W.2d 464 (Mo. banc 1993). The Supreme Court's view on the reasonable doubt instruction in *Griffin I* was not affected by the corrections in *Griffin II*.

mistake has been made. *Foster v. State*, 748 S.W.2d 903, 905 (Mo.App.1988).

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.-15(h).

A trial counsel may be found ineffective for failing to locate and call witnesses if the movant can show (1) the witnesses could have been located through reasonable investigation, (2) they would have testified if called, and (3) their testimony would have provided a viable defense. *State v. Vinson*, 800 S.W.2d 444, 448–49 (Mo. banc 1990).

In denying Defendant's claim, the motion court found as follows:

> Movant contends that his trial attorney was ineffective because he failed to produce evidence that the victim had made false allegations about being sexually touched by a boy at school; and because he failed to impeach her with those allegations, a physician's statement, and her allegedly inconsistent testimony at the preliminary examination. There is no evidence that the allegations were false. Whether evidence as to the incidents would have been admitted is doubtful. They were irrelevant and should be barred by Section 491.015. The manner of attempted impeachment of the eight-year old victim was for the trial attorney. Movant has not proved ineffectiveness in these respects.

The record fully supports the findings of the motion court, and we are left with no definite nor firm impression that a mistake has been made. Each of the three named witnesses testified at the Rule 29.15 hearing, and none testified that C.G. had falsely accused a classmate of touching her in a sexual manner. None gave testimony that would cast doubt on C.G.'s credibility. Even if the witnesses' testimony could have somehow impeached C.G.'s testimony, the failure to call a witness whose testimony would serve only as impeachment of C.G. is not sufficient to establish ineffective assistance of counsel. *State v. Anderson*, 785 S.W.2d 596, 601 (Mo.App. 1990).

Finally, the motion court was not clearly erroneous when it found that any testimony regarding C.G.'s prior sexual allegations would have been inadmissible under § 491.-015, the rape shield statute. *See State v. Weiler*, 801 S.W.2d 417, 419 (Mo.App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 295, 116 L.Ed.2d 240 (1991). Failure to call witnesses whose testimony would be inadmissible cannot form a basis for a claim of ineffective assistance of counsel.

Because Defendant made no showing that the three witnesses would have provided him a viable defense or that their testimony was admissible, his argument is rejected.

The judgments are affirmed.

PREWITT and GARRISON, JJ., concur.