**STATE of Missouri, Respondent,**

v.

**Mitchell BENN, Appellant.**

**No. WD 72146.**

Missouri Court of Appeals,
Western District.

May 17, 2011.

Kent Denzel, Columbia, MO, for Appellant.

Jayne T. Woods, Jefferson City, MO, for Respondent.

Before GARY D. WITT, P.J., JAMES EDWARD WELSH, and ALOK AHUJA, JJ.

JAMES EDWARD WELSH, Judge.

Mitchell Benn appeals the circuit court's judgment convicting him of one count of child molestation in the first degree and three counts of statutory sodomy in the first degree. He contends that the evidence was insufficient to convict him of child molestation in the first degree and two of the counts of statutory sodomy in the first degree. He also contends that the circuit court plainly erred when it permitted a Children's Division worker to testify about her opinions concerning Benn's statements to her during an investigative interview. We affirm the circuit court's judgment.

Viewing the evidence in the light most favorable to the verdict, the evidence established in June of 2008, L.Z. and her six-year-old daughter, M.B., moved into a home in Carrollton, Missouri, with C.G., who was L.Z.'s mother-in-law and M.B.'s grandmother; Benn, who was L.Z.'s brother-in-law and M.B.'s uncle; and Randy Speakman. In July 2008, the entire group moved to a home in Bogard, Missouri.

One day, while playing with a neighbor, the neighbor asked M.B. if Benn had ever touched her, and M.B. indicated that he had. M.B. told her neighbor that Benn would take her to his room and that he would cover her mouth and tell her not to talk. M.B. said that Benn would make her touch and lick "his private." M.B. also said that Benn would try to touch her "private area." M.B. asked her neighbor not to tell, but her neighbor decided to tell her mother. According to the neighbor's mother, M.B. told her that Benn had touched her in the private area. The neighbor's mother then told a friend about what M.B. had said and that friend reported it to law enforcement.

Police officials thereafter notified L.Z. of the allegations, and L.Z. and M.B. moved out of the home that they shared with Benn. On July 14, 2008, Stephanie Kissick, a children's service worker for the Carroll County Children's Division, talked with M.B. M.B. told Kissick that Benn had been doing bad things to her. M.B. said that Benn had placed an apple "down there where she pees" and ate the apple.

M.B. was then referred to Beth Jackman for a Child Safe interview. During this interview, M.B. said that Benn made her put lotion on his "wiener" and rub it up and down. She said that the lotion belonged to her grandmother and was a medicated diabetic lotion. M.B. indicated that Benn kept the lotion hidden under his bed. She said that she put the lotion on with a towel. She told the interviewer that Benn's "wiener" was soft before the lotion and softer after she put the lotion on it. M.B. indicated that Benn's "wiener" would "spit" when she was done and that he would then make her put his "wiener" in her mouth. She said that he shoved her face on "his wiener." She stated that she bit his "wiener," causing him to scream, at which point her grandmother came in the room and Benn got in trouble for kicking M.B.

M.B. also indicated that once when she was in her grandmother's room getting ready for bed and wearing her nightgown, Benn came in, "stuck his wiener out" of his pants and made her hug him. When asked where Benn's wiener was when he hugged her, M.B. said it was "right in the target of mine," "down there" in her "private spot." M.B. said she was standing on the bed while Benn was standing on the floor. When asked what Benn's "wiener" looked like, she said it looked like a triangle on top and that the rest looked like skin with hair.

M.B. also described another incident where Benn "licked [her] in the private spot" while they were in Speakman's room. She said that Benn took down her pants and licked her while she was sitting on a blue chair. While doing so, Benn asked M.B., "Does that feel good?"

During the interview, M.B. was asked to look at some anatomical drawings of a male and a female. When asked to circle her "private spot," M.B. circled the vagina on the female drawing. When asked to circle the "wiener," M.B. circled the penis.

At trial, M.B. said that she put lotion on Benn's "wee-wee," his "potty," or his "bad place." She said that, although Benn was clothed, she was able to put lotion on it because Benn "stuck it out." She also recalled a time when, as she was in her

grandmother's room getting dressed in her pajamas, Benn "stuck out his potty" and hugged her while she was standing on the bed.

A later search of Benn's bedroom revealed a bottle of medicated lotion, matching the description given by M.B., located underneath Benn's bed. Benn was asked to accompany officers to the sheriff's department to answer some questions, and he agreed to do so. Benn was advised of his *Miranda* warnings, and he agreed to speak with the detectives. Benn denied ever being alone with M.B., and he said that he never played with her at all unless someone else was around. Benn said that, when he and M.B. would play together, they would roughhouse around, and sometimes he would pick her up by the feet and hold her head between his legs in the knee area. Regarding the lotion bottle, Benn said that his mother had loaned him the lotion the night before the officers came to visit to take care of some roughness he had on his heels. When asked why it was under the bed, Benn said that it had been on a shelf and must have gotten knocked under the bed when he was making the bed.

Officers also asked Benn whether he ever masturbated, and if so, whether he used the lotion. Benn indicated that he did masturbate, but he denied using the lotion. When asked about where M.B.'s allegations were coming from, Benn suggested that they were coming from L.Z. because she was angry with him about something. Benn also indicated that if someone had been molesting M.B., Speakman or L.Z.'s boyfriend might be persons of interest.

Benn was also interviewed by Stephanie Kissick of the Children's Division. When asked why M.B. might be making the accusations against him, Benn said he thought L.Z. was telling M.B. to make the accusations because L.Z. was mad at Benn about paying bills. Benn also suggested that L.Z.'s boyfriend was telling M.B. what to say because he did not get along with Benn. Benn also said that L.Z. and Speakman were out to get him and ruin his life.

Kissick asked Benn whether there was a possibility that M.B. had ever seen him naked, and Benn said that M.B. had walked in on him in the shower but he yelled at her and told her to get out. Benn also indicated that M.B. may have witnessed him masturbating through a gap underneath his bedroom door in the house in Carrollton. Benn denied ever using a lotion during masturbation and could not explain why M.B. would associate that specific lotion with masturbating.

When asked for more detail about the lotion, Benn said he took the lotion from his mother in Carrollton and kept it for two or three days before M.B. and L.Z. lived in the home. He said that, during that time period, the lotion must have fallen under his bed and M.B. must have seen it there. Benn said that his mother later asked for the lotion back, and he returned it. He said that his mother has had the lotion ever since. Benn further stated that the lotion did not make the move to Bogard until after L.Z. and M.B. had moved out. When asked how M.B. could identify that the lotion was in the house in Bogard under the bed in Benn's room, Benn had no response. He explained that the lotion was under his bed in Bogard because his mother had given it to him the day before the search and that it must have fallen under his bed somehow. He also suggested that perhaps Speakman had told M.B. about the lotion under Benn's bed. Benn admitted, however, that Speakman really did not live in the house in Bogard after the lotion had been moved.

A jury convicted Benn of three counts of statutory sodomy in the first degree and

one count of child molestation in the first degree. Benn appeals.

In his first point on appeal, Benn asserts that the evidence was insufficient to convict him of child molestation in the first degree because no evidence existed establishing that his genitals touched M.B. through her clothing and that, even if such evidence existed, such touching does not meet the statutory definition of "sexual contact" under section 566.010(3), RSMo Cum Supp.2010. Further, he asserts that, even if section 566.010(3)'s definition of "sexual contact" is established, the proper definition of "sexual contact" is that found in section 556.061(30), RSMo Cum.Supp. 2006, and the State failed to establish "sexual contact" under that definition. We disagree.

In reviewing the sufficiency of the evidence, we deem all evidence favorable to the State to be true. *State v. Crawford,* 68 S.W.3d 406, 407 (Mo. banc 2002). We do not reweigh the evidence, and we disregard all evidence and inferences contrary to the verdict. *Id.* at 408. Our review is limited to determining whether or not the State presented sufficient evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.*

■ Before addressing whether the evidence was sufficient to establish that Benn engaged in "sexual contact" with the victim, we must address Benn's contention that we should apply the definition of "sexual contact" found in section 556.061(30), rather than the definition of "sexual contact" found in § 566.010(3). Benn asserts that because section 556.061's definition is arguably more narrow, the rule of lenity dictates such an application. We disagree.

Benn was charged in Count IV with first-degree child molestation in violation of section 566.067, RSMo Cum.Supp.2010. (L.F.5). "A person commits the crime of

child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact." § 566.067.1. As to the child molestation charge, the jury was instructed:

> As to Count 4, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or between June 1, 2008, to July 6, 2008, in the County of Carroll, State of Missouri, [Benn] touched M.B. with [Benn's] genitals through the clothing, and
>
> Second, that [Benn] did so for the purpose of arousing or gratifying [Benn's] sexual desire, and
>
> Third, that M.B. was a child less than fourteen years old,
>
> then you will find [Benn] guilty under Count 4 of child molestation in the first degree under this instruction.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find [Benn] not guilty of that offense.

There are two different definitions of "sexual contact" in the Missouri statutes. One is found in section 566.010, and the other is found in section 556.061. The definition in chapter 566 provides:

> As used in this chapter and chapter 568, RSMo, the following terms mean:
>
> . . . .
>
> (3) **"Sexual contact"**, any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]

§ 566.010(3). The definition in chapter 556 provides:

In this code, unless the context requires a different definition, the following shall apply:

. . . .

(30) *"Sexual contact"* means any touching of the genitals or anus of any person, or the breast of any female person, or any such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.] § 556.061(30).

Benn argues that the rule of lenity requires this Court to apply the arguably more narrow definition found in chapter 556 rather than the definition in chapter 566. In making this argument, however, Benn ignores the fact that "the rule of lenity is a default rule[,]" *Turner v. State,* 245 S.W.3d 826, 828 (Mo. banc 2008), and that "[w]hen the language of the statute is unambiguous, a court must give effect to the language as written." *State v. Pesce,* 325 S.W.3d 565, 575 (Mo.App.2010).

Here, the statutes clearly indicate that the definition to be applied to an offense in chapter 566 is the definition found in section 566.010. Section 566.010 states, *"As used in this chapter* and chapter 568, RSMo, the following terms mean:. . . ." (Emphasis added). By contrast, section 556.061 states, "In this code, *unless the context requires a different definition,* the following shall apply:. . . ." (Emphasis added). The two statutes read together plainly indicate that section 566.010 controls terms requiring definition in chapters 566 and 568, while section 556.061 applies everywhere else a definition of "sexual contact" is required. Because Benn was charged with first-degree child molestation, an offense found in chapter 566, the proper definition to apply is that found in section 566.010.

Benn argues, however, that insufficient evidence existed to establish any physical contact whatsoever between his penis and the victim's person. "Sexual contact" is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" § 566.010(3).

At trial, the State presented testimony from the victim, along with her video-taped Child Safe interview. During her testimony, M.B. stated that one evening, she had just gotten dressed in her nightgown when Benn came into the bedroom and "stuck out his potty." She indicated that he then hugged her while she was standing on the bed and he was standing on the floor. In her Child Safe interview, when asked where Benn's wiener was when he hugged her, M.B. said it was "right in the target of mine," "down there" in her "private spot." Contrary to what Benn asserts, this evidence was sufficient for the jurors to believe beyond a reasonable doubt that Benn touched the victim with his genitals, as is required by the definition of "sexual contact" in section 566.010(3).

Benn argues, however, that the definition of "sexual contact" "does not apply to touching with the genitals through clothing." He asserts that the phrase "or such touching through the clothing" modifies only the immediately preceding phrase "any touching of the genitals or anus of another person, or the breast of a female person." Essentially, he argues that touching another person with one's genitals constitutes "sexual contact" only if there is skin-to-skin to contact. However, "[t]he type of touching, whether through or underneath the clothing, is inconsequential." *State v. Peeples,* 288 S.W.3d 767, 771 (Mo.App.2009). "[A]ny touching, as described in [section] 566.010(3), occurring either under or through the clothes of the

victim [constitutes] 'sexual contact.'" *State v. Robinson,* 108 S.W.3d 689, 693 n. 2 (Mo.App.2003). To construe section 566.010(3) otherwise would lead to an absurd result: a person would not have engaged in sexual contact if that person used his bare genitals to touch another person who was fully clothed. "This Court presumes that the legislature did not intend an absurd result." *Weeks v. State,* 140 S.W.3d 39, 47 (Mo. banc 2004).

Substantial evidence was presented at trial that Benn's penis touched the victim. The fact that a piece of cloth was between his penis and M.B. is inconsequential. The evidence, therefore, was sufficient for a jury to find Benn guilty of child molestation in the first degree.

■ In his second point on appeal, Benn asserts that the evidence was insufficient to convict him of the first count of statutory sodomy in the first degree because no evidence existed establishing that he engaged in deviate sexual intercourse with the victim. In particular, he contends that the evidence was insufficient to establish deviate sexual intercourse because the victim testified that she applied lotion to Benn's penis using a towel.

The same standard of review is applicable in this point as was employed in point one. Our review is limited to determining whether or not the State presented sufficient evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Crawford,* 68 S.W.3d at 407–08.

"A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old." § 566.062.1, RSMo Cum.Supp.2010. "Deviate sexual intercourse" is defined as "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person ... done for the purpose

of arousing or gratifying the sexual desire of any person[.]" § 566.010(1), RSMo Cum. Supp.2010.

At trial, the victim testified that Benn had her put lotion on his "wee-wee." She also referred to the area as "his bad place." During her Child Safe interview, the victim indicated that Benn had her put lotion on his wiener and rub it up and down; she further stated that it would "spit" when she was done. When asked how she put the lotion on Benn, the victim said she put it on him with a towel. M.B. also indicated that Benn's "wiener" felt soft before she applied the lotion and that it felt softer after she applied the lotion.

Benn argues that this evidence was insufficient to establish statutory sodomy because the towel-to-genital contact described by the victim did not fall within the definition of deviate sexual intercourse. Specifically, Benn alleges that "the act did not involve her hand, and it did not meet the definition of deviate sexual intercourse." We disagree.

First, M.B.'s description of how Benn's "wiener" felt before and after she applied the lotion provided the jury with a reasonable inference of skin-to-skin contact. Thus, the evidence was sufficient to establish hand-to-genital contact.

But even if M.B.'s tactile description were not enough, her description of applying the lotion with a towel still met the definition of deviate sexual intercourse because the application *involved* the use of her hand. This court addressed a similar claim in *State v. Clay,* 909 S.W.2d 711 (Mo.App.1995). In *Clay,* the defendant was charged with sodomy based upon his act of inserting a wooden, penis-shaped object into his daughter's vagina. *Id.* at 714. At the time, "deviate sexual intercourse" was defined as "any sexual act involving the genitals of one person and

the mouth, tongue, hand or anus of another person."[1] *Id.* The defendant argued that the definition did not cover his act of inserting an object into his daughter's vagina; he argued that it only covered hand or finger contact. *Id.* This court disagreed, holding that " '[i]nvolving' is the key term [in the definition], and it is undeniable that Clay's manual insertion of the wooden, penis-shaped object into his daughter's vagina 'involved' both the object and his hand." *Id.*

The same is true in this case. Regardless whether a towel was between the victim's hand and Benn's penis when she applied the lotion, her act of applying the lotion still "involved" her hand. Thus, this action met the statutory definition of deviate sexual intercourse. The evidence, therefore, was sufficient for a jury to find Benn guilty on Count I of statutory sodomy in the first degree.

■ In his third point, Benn contends that the evidence was insufficient to convict him on Count III of statutory sodomy in the first degree because no evidence existed establishing that Benn touched the victim's genitals with his mouth. In particular, he asserts that the victim testified that Benn licked her "private spot" but did not testify or tell anyone that Benn put his mouth or tongue on her genitals.

Again, we employ the same standard of review as that used in point one and point two. Our review is limited to determining whether or not the State presented sufficient evidence from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *Crawford*, 68 S.W.3d at 407–08.

At trial, the victim testified that there was a back room containing a blue chair at the Carrollton home that she and Benn went into. During her Child Safe interview, the victim indicated that Benn took down her pants while she sat in the blue chair, and he licked her "in the private spot." Benn asked the victim, "Does that feel good?" When asked to circle her "private spot" on an anatomical drawing of a female body, M.B. circled the vagina. She had earlier described her "private spot" by pointing to her genital region and saying "down here." Additionally, when describing Benn's conduct, the victim stated that "he licked my bad spot" and pointed between her legs.

Benn argues that the victim's use of the term "private spot" and her act of circling the genital region of the anatomical drawing were insufficient to establish that Benn licked her genitals, as opposed to some other part of her body within the drawn circle. Benn's argument is without merit.

In *State v. Ray*, 852 S.W.2d 165 (Mo. App.1993), the defendant argued that the evidence was insufficient to support his conviction of sodomy because the victim's description that the defendant had "licked her 'in the private' between her legs" failed to identify her genitals. *Id.* at 168–69. In addition to her testimony, the victim had also marked a spot on an anatomical diagram and referred to the place between her legs as "the wrong spot." *Id.* at 169. The Southern District rejected the defendant's claim, noting that the victim's "reference to 'wrong spot' or 'in the private' does not render the evidence insufficient." *Id.* The court held that "Clearly, a reasonable inference from [the victim's] testimony *alone* was that Defendant's acts constituted deviate sexual intercourse, i.e., the involvement of Defendant's mouth and

---

1. The definition has since been amended to cover penetration with an object or instru-ment. § 566.010(1).

[the victim's] genitals." *Id.* (emphasis added).

In this case, it was reasonable for the jurors to infer that the victim's reference to her "private spot," or "bad spot," coupled with her action of pointing to her genital region between her legs and circling the same area on an anatomical drawing, indicated that Benn licked her genitals. The evidence, therefore, was sufficient for a jury to find Benn guilty on Count III of statutory sodomy in the first degree.

■ In his last point, Benn contends that the circuit court plainly erred when it permitted Stephanie Kissick, a children's service worker for the Carroll County Children's Division, to testify about her opinions concerning Benn's statements to her during an investigative interview. Benn asserts that Kissick's statements constituted improper comments on the veracity of another witness. We disagree.

Benn acknowledges that his claim is not preserved based on his lack of objection to the testimony he now challenges. He nevertheless requests plain error review.

Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted there from." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc), *cert. denied,* 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk,* 280 S.W.3d 600, 607 (Mo. banc.), *cert. denied,* —— U.S. ——, 130 S.Ct. 144, 175 L.Ed.2d 93 (2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious and clear." *Id.* (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.*

Benn's claim does not meet the initial threshold test. His claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice. Thus, we need not proceed with any Rule 30.20 plain error review. We, however, *ex gratia* explain below why the claimed error does not amount to plain error.

Kissick, a worker for the Carroll County Children's Division, conducted an investigative interview of Benn, wherein they discussed M.B.'s allegations involving the lotion and M.B.'s potential motivation behind the allegations. During this interview, Kissick confronted Benn with inconsistencies and apparent flaws in his version of events, which in some cases prompted responses and in other cases prompted silence. Benn complains that Kissick's recitation of the interview contained improper comments on Benn's credibility as a witness.

"While it is true that the province of the jury is impermissibly invaded when one

witness testifies to the credibility of another witness, testimony regarding credibility that is not directed to trial testimony, nor overall credibility, has been held to be admissible." *State v. Shaffer,* 251 S.W.3d 356, 358 (Mo.App.2008) (internal citation omitted). In *Shaffer,* the investigating detective testified at trial regarding his interview of the defendant. *Id.* at 357. During his testimony, the detective indicated that the defendant's responses were "indicative of somebody whose [sic] not being honest with me." *Id.* The defendant did not object but raised a plain error claim on appeal regarding the admission of the detective's statement. *Id.* The Southern District rejected the defendant's claim, finding no grounds for believing that manifest injustice or miscarriage of justice occurred. *Id.* at 358. "The singular statement made by the detective indicated the detective did not believe [defendant] was telling the truth at the time he was giving his initial statement." *Id.* Moreover, the court noted that "[t]he dectective's perceptions would have been relevant to his decision to continue questioning [defendant.]" *Id.* Because the detective's comment was not directed to either the defendant's trial testimony or his overall credibility as a witness, there was no error in the admission of the statement. *Id.*

The same is true here. Kissick's comments were directed to statements Benn made during the investigative interview and gave context to Kissick's continuing to confront Benn with apparent inconsistencies despite his denial. They were not comments on Benn's overall credibility and were not comments on the credibility of Benn's trial testimony. Further, several of the comments that Benn challenges were apparently directed to Benn during Kissick's interview of him and were, therefore, relevant to establishing the course of the interview and providing context to Benn's statements during that interview.

*State v. Taylor,* 298 S.W.3d 482, 505 (Mo. banc 2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 3323, 176 L.Ed.2d 1226 (2010). Thus, there was no error, much less plain error, in their admission.

We, therefore, affirm the circuit court's judgment.

All concur.