STATE of Missouri, Plaintiff-
Respondent,

v.

David Lee HANKINS, Defendant-
Appellant.

No. SD 34600

Missouri Court of Appeals,
Southern District,
Division One.

Filed: October 17, 2017

ATTORNEY FOR APPELLANT—ELLEN H. FLOTTMAN, Columbia, MO.

ATTORNEY FOR RESPONDENT—GARRICK APLIN, Jefferson City, MO.

MARY W. SHEFFIELD, P.J.

David Lee Hankins ("Defendant") appeals one of his three convictions for first-degree child molestation following a bench trial. See § 566.067.1.[1] In one point on appeal, Defendant argues there was insufficient evidence that he touched the genitals of one of his victims, A.W. For the reasons that follow, the trial court's judgment is affirmed.

### Factual and Procedural Background

On appeal, "[t]his Court views the evidence and all reasonable inferences derived therefrom in a light most favorable to the verdict and disregards any contrary evidence and inferences." *State v. Lopez-McCurdy*, 266 S.W.3d 874, 876 (Mo. App. S.D. 2008). So viewed, the following evidence was adduced at trial.

S.H. ("Mother") testified that S.H., A.H., and A.W. are her daughters. S.H. was born in May 2003; A.H. was born in July 2006; and A.W. was born in September 2009. Mother met Defendant in early 2010, and moved in with him in June of the same year. Mother testified that A.H. referred to Defendant as "Dave-Dave," and A.W. referred to him as either "Dave-Dave" or "Daddy." Mother identified Defendant in court as the same individual that the girls called either "Dave-Dave" or "Daddy."

In March 2013, A.H. told Mother that "Dave-Dave" had "bad videos on his phone" of naked men and women "touch-

---

1. All statutory references are to RSMo Cum. Supp. (2012).

ing and kissing each other's private areas." Defendant made A.H. watch the videos one day after she had been sent home early from school due to an illness. A.H. told Mother that while they watched the videos, Defendant placed his hand down the back of her pants and touched her "private parts" with his fingers. Defendant moved out of the house immediately after A.H. made these disclosures to Mother.

Mother called A.H.'s school counselor and law enforcement officials, and an appointment was scheduled for each of her daughters at the Child Advocacy Center ("CAC") in Springfield. A forensic interviewer from the CAC, Ashley Reece ("Reece"), testified that she spoke with all three girls in March 2013. S.H. did not make "a disclosure" to Reece, but A.H. and A.W. did. Reece's taped interviews with A.H. and A.W., State's Exhibits 1 and 2, were admitted into evidence at trial and have been deposited with this Court.[2]

In A.H.'s CAC interview, A.H. (six years old at that time) told Reece that when she watches videos with Defendant, he "rubs" her "private," which she demonstrated with a doll was the place between her legs, with his hand. Defendant played videos depicting a "big girl" and a "big boy" on his cellular phone; the girl was "sucking and rubbing" the boy's "private." A.H. also described an occasion where Defendant had put his hand inside her jeans and "rubbed" her while they waited in the car for Mother to get her nails done. Defendant covered A.H.'s lap with a blanket and asked her if his touch felt good, to which she responded, "No."

Reece held a separate interview with A.W. (three years old at that time). During the interview, A.W. told Reece that "Dave-Dave" lived with her, and that she also referred to him as "Daddy." A.W. explained that "Dave-Dave" was a "grown-up." On an anatomically correct drawing of a female child, A.W. accurately identified the face, eyes, mouth, hair, "boobies," belly button, back, legs, feet, and "butt."[3] However, A.W. identified the female genitalia area as her "body."[4] A.W. recalled that "Daddy" tickled her "body" and pointed to the representation of female genitalia on the drawing with the tip of a marker. When asked again by Reece where her "body" was, A.W. pointed to the representation of female genitalia with the tip of a marker. Reece then pointed to the crotch on the drawing and asked A.W. what Defendant tickled her "body" with; A.W. responded, "Fingers."

---

**2.** Section 491.075.1 provides:

A statement made by a child under the age of fourteen … relating to an offense charged under chapter 565, 566, 568 or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted[.]

§ 491.075.1. The trial court admitted A.H. and A.W.'s statements to Reece and Mother following a hearing in which the court determined the statements contained sufficient indicia of reliability to qualify for admission under the statute. Defendant does not contest the admissibility of those statements. "Such statements, and any reasonable inferences that may be drawn from those statements, 'may alone constitute substantial evidence of an element of the offense charged.'" *State v. Benwire*, 98 S.W.3d 618, 623 (Mo. App. W.D. 2003) (quoting *State v. Goad*, 926 S.W.2d 152, 156 (Mo. App. E.D. 1996)).

**3.** This drawing, State's Exhibit 2a, was admitted into evidence and has been deposited with this Court.

**4.** Reece testified that "we know that children give … lots of different names for body parts … so we use the [anatomical] drawings to arrive at a common language with the child." Reece further clarified that the drawings helped her avoid making an assumption regarding the language a child used.

A.W. also explained that it was "ok" if someone touched her belly button, but it was "not ok" if they touched her "body." [5] Immediately thereafter, Reece asked A.W. if anyone had touched her "body"; A.W. responded that "Dave-Dave did," directed the tip of her marker to the crotch area on the drawing, and repeated that Dave-Dave had tickled her "body." A.W. stated that "Dave-Dave" had tickled her "body" at a time when she and "Dave-Dave" were at home alone. Reece asked A.W. if she had "any other daddy's." A.W. responded, "Dave-Dave."

The State charged Defendant with three counts of first-degree child molestation. Counts 1 and 2 related to Defendant's sexual contact with A.H. while Count 3 related to sexual contact with A.W. Defendant waived his right to a jury and received a bench trial. The trial court found Defendant guilty and sentenced him to three concurrent terms of eight years' imprisonment. This appeal followed as to only the conviction for Count 3 regarding A.W.

### Standard of Review

 When reviewing the sufficiency of the evidence in a bench-tried case, this Court employs the same standard of review as in a jury-tried case. *State v. Rousselo*, 386 S.W.3d 919, 920 (Mo. App. S.D.

2012). That is, we "do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Wooden*, 388 S.W.3d 522, 527 (Mo. banc 2013). "[T]his Court's review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." *State v. Burrell*, 160 S.W.3d 798, 801 (Mo. banc 2005). Reliability, credibility, and the weight afforded to witness testimony are all for the fact-finder to determine. *State v. Cannafax*, 344 S.W.3d 279, 284 (Mo. App. S.D. 2011).

### Discussion

 Defendant's sole point argues that "the state's evidence was insufficient to sustain the court's finding of guilt on child molestation in the first degree as to AW, since the state's evidence failed to establish beyond a reasonable doubt that [Defendant] touched the genitals of AW." From the argument section of Defendant's brief, it *appears* he claims that there was insufficient evidence to establish: (1) his identify as the person who molested A.W.; and (2) that he made "sexual contact" with A.W.[6] We address each argument in turn.

5. Mother testified that she had spoken with her daughters about "good touches and bad touches," with bad touches referring to anything covered by the panties.

6. Neither Defendant's point nor his argument is a model of clarity. The near entirety of Defendant's argument related to his sufficiency challenge is contained in the following three sentences from his brief:

AW's answers did not establish child molestation in the first degree. AW pointed to the crotch of the drawing and said "daddy" tickled her there, but it was far from clear that "daddy" and "Dave-Dave" were the

same person, since she denied knowing appellant ("Dave-Dave") at trial.... Furthermore, the general area pointed to on the drawing could have referred to AW's upper thighs, her buttocks, or any other area around her genitals.

This Court may not advocate for an appellant by constructing arguments on his behalf, *State v. Massa*, 410 S.W.3d 645, 657 (Mo. App. S.D. 2013), and the aspects of Defendant's conviction that he challenges are neither patent nor adequately developed. But we will address what we discern are his arguments.

### Identification of Defendant

We first address Defendant's argument that there was insufficient evidence that A.W. identified Defendant as the individual who made sexual contact with her because A.W. testified at trial that she did not remember ever having lived with "someone named Dave."

A.W. was only three years old at the time of her CAC interview in March 2013. Defendant moved out of A.W.'s house prior to the interview, and she was not asked to testify until April 2016—more than three years later. Under these circumstances, it is unsurprising that A.W.'s memory of anyone named Dave living with her had faded. Indeed, our courts recognize that "the testimony of young victims about sensitive matters commonly contains some variations, contradictions, or lapses in memory." *State v. Jackson*, 439 S.W.3d 276, 280 (Mo. App. E.D. 2014). But just as common is the recognition that such variations, contradictions, and lapses in memory are matters for the fact-finder to resolve. See, e.g., *State v. Porter*, 439 S.W.3d 208, 214 (Mo. banc 2014) ("the trier of fact is generally in the best position to resolve inconsistent testimony by the child victim of a sex crime."); *State v. Paulson*, 220 S.W.3d 828, 833 (Mo. App. S.D. 2007) ("contradictions between a witness's trial testimony and any previous testimony or statements are for the trier of fact to reconcile and consider when judging the witness's credibility.") (internal quotation marks omitted).[7]

Defendant was certainly able to argue at trial any contradiction between A.W.'s trial testimony and her previous out-of-court statements. Our role on appeal, however, is to accept as true all of the evidence and reasonable inferences favorable to the State, disregard all evidence and inferences to the contrary, and avoid reweighing evidence or witness credibility. *Lopez-McCurdy*, 266 S.W.3d at 876. During the CAC interview, A.W. specifically identified the person who had touched her genitals as an adult living in her home known to her as either "Dave-Dave" or "Daddy," which were the two names that Mother testified A.W. called Defendant. The trial court, as the fact-finder in this case, was free to consider A.W.'s statements at her CAC interview in conjunction with her trial testimony and either accept or reject A.W.'s out-of-court statements, but it is not within this Court's province to reweigh that evidence. There was sufficient evidence presented at trial from which the trial court could have reasonably found that Defendant was the person who subjected A.W. to sexual contact.

### Sexual Contact

Defendant also claims that the evidence was insufficient to establish that he touched A.W.'s genitals, rather than some other area that was only *near* her genitals. We disagree because Defendant ignores evidence and reasonable inferences from that evidence which support the verdict.

To convict a person of first-degree child molestation, the prosecution must prove that the person subjected "another person who is less than fourteen years of age to sexual contact." § 566.067.1. As applicable here, "sexual contact" means "any touching of the genitals ... of another person ... or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" § 566.010(3). "When a defendant challenges the sufficiency of the evidence to

---

7. *Porter* abolished the "corroboration rule" and "destructive contradictions doctrine" discussed at length in *Paulson*. See *Porter*, 439 S.W.3d at 210.

support a finding that sexual contact occurred, the issue is whether there is at least a reasonable inference that there was the touching of the genitals." *State v. Greenlee*, 327 S.W.3d 602, 619 (Mo. App. E.D. 2010) (quoting *State v. Willis*, 239 S.W.3d 198, 200 (Mo. App. S.D. 2007)).

The term "genitals" is not defined in Chapter 566, but it has been defined by this Court as "the organs of the reproductive system; esp. the external genital organs." *State v. Ray*, 852 S.W.2d 165, 169 (Mo. App. S.D. 1993). The failure of a child victim of a sex crime to use anatomically correct terminology, however, does not render the evidence of sexual contact insufficient. *Id.* That is, "when a child is the victim of a sexual crime, the name by which the victim identifies body parts is a collateral matter." *Greenlee*, 327 S.W.3d at 619.

Here, A.W. consistently referred to a representation of female genitalia as her "body" and twice pointed specifically to the crotch on an anatomical drawing when identifying where Defendant placed his fingers. Moreover, A.W. specified that Defendant touched her in a place that was "not ok" to touch. Finally, that Defendant touched A.W. while they were alone further supports the reasonable inference that Defendant touched A.W.'s genitals as opposed to a more benign body part that would not have required secrecy.

In *State v. Benn*, 341 S.W.3d 203, 210-11 (Mo. App. W.D. 2011), the Court heard an argument that the victim's circling of the genital region of an anatomical drawing and use of the term "private spot" was insufficient to establish that the defendant had contacted her genitals as opposed to another part of the body within the circle. The Court rejected the argument, finding "it was reasonable for the jurors to infer that the victim's reference to her 'private spot,' or 'bad spot,' coupled with her action of pointing to her genital region between her legs and circling the same area on an anatomical drawing, indicated that [the defendant] licked her genitals." *Id.* at 211.

Similarly, A.W.'s statements that Defendant touched her in a spot that was "not ok" to touch, coupled with the fact that she twice pointed to the representation of female genitalia when asked where Defendant touched her, allowed a reasonable trier of fact to determine that Defendant had touched A.W.'s genitals with his hand, thereby subjecting her to sexual contact under § 566.010(3). As a result, point one is denied.

### Decision

The trial court's judgment is affirmed.

GARY W. LYNCH, J.—CONCURS

DON E. BURRELL, J.—CONCURS